UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER M. MEISSNER,

                Petitioner,

                                    CASE NO. 2:13-CV-12351
    v.                            JUDGE GERSHWIN A. DRAIN
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

DUNCAN MacLAREN,

                Respondent.

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.      REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      D.    *Sufficiency of the Evidence (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                a. Home Invasion and Domestic Assault . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                b. Obstruction of Justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      E.    *Evidentiary Claims (Claims IV & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
                a. Prior Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
                b. Hearsay Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
      F.    *Prosecutorial Misconduct (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
      G.    *Ineffective Assistance of Counsel (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
      H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 30
           1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
      I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
III.     NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Christopher M. Meissner is a state prisoner, currently confined at the Kinross Correctional Facility in Kincheloe, Michigan.

2.      On May 17, 2010, petitioner was convicted of domestic violence, second offense, MICH. COMP. LAWS § 750.81(3); first degree home invasion, MICH. COMP. LAWS § 750.110a(2); and obstruction of justice, MICH. COMP. LAWS § 750.505, following a jury trial in the Oakland County Circuit Court. On June 10, 2010, he was sentenced as a fourth habitual offender to concurrent terms of 6-30 years' imprisonment on the home invasion conviction, 2-15 years' imprisonment on the obstruction of justice conviction, and 93 days in jail on the domestic violence conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      DEFENDANT WAS DENIED A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF A HEARSAY STATEMENT IMPROPERLY USED AS SUBSTANTIVE EVIDENCE; THE STATEMENT WAS INADMISSIBLE UNDER MCL 768.27c AND THE PREJUDICIAL EFFECT OF THE HIGHLY INFLAMMATORY, IRRELEVANT ALLEGATIONS OUTWEIGHED ANY PROBATIVE VALUE. US CONST AM XIV.

II.     DEFENDANT WAS DENIED DUE PROCESS OF LAW WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTION OF DOMESTIC ASSAULT AND HOME INVASION. US CONST AM XIV; CONST 1963, ART 1, § 17.

III.    DEFENDANT WAS DENIED DUE PROCESS OF LAW WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTION OF OBSTRUCTION OF JUSTICE.

2

IV.   DEFENDANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF PRIOR ACTS THAT WERE MORE UNFAIRLY PREJUDICIAL THAN PROBATIVE.  US CONST AM XIV.

V.   DEFENDANT WAS DENIED A FAIR TRIAL BY THE IMPROPER COMMENTS MADE BY THE PROSECUTOR IN OPENING STATEMENT AND CLOSING ARGUMENT.  US CONST AM XIV.

Petitioner also filed a *pro per* supplemental brief, raising the following additional claims:

I. (A)   DEFENDANT WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN COUNSEL WAS INEFFECTIVE IN HIS ASSISTANCE BY FAILING TO OBJECT TO PROSECUTOR MISCONDUCT STATEMENTS DURING HIS OPENING STATEMENT AND CLOSING ARGUMENT.  US CONST AM V, VI, XIV; CONST 1963, ART I, SEC'S 17, 20.

(B)   DEFENDANT WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN COUNSEL WAS INEFFECTIVE IN HIS ASSISTANCE BY REFUSING TO SUBPOENA EVIDENCE AND WITNESSES REQUESTED BY THE DEFENDANT, WHICH DENIED THE DEFENDANT THE RIGHT TO CONFRONTATION.  US CONST AM V, VI, XIV; CONST 1963, ART I, SEC'S 17, 20.

(C)   DEFENDANT WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN DEFENSE COUNSEL WAS INEFFECTIVE IN HIS ASSISTANCE WHEN HE FAILED TO PRODUCE AND INCLUDE THE "DEFENSE THEORY" IN THE JURY INSTRUCTION PACKET.  US CONST AM V, VI, XIV; CONST 1963, ART I, SEC'S 17, 20.

II.   DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GIVING ERRONEOUS JURY INSTRUCTIONS, PURPOSELY DESIGNED TO BIAS AND PREJUDICE THE JURY PANEL AGAINST THE DEFENDANT.  US CONST AM XIV.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences.  *See People v. Meissner*, 294 Mich. App. 438, 812 N.W.2d 37 (2011).

4.   Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People*

3

*v. Meissner*, 491 Mich. 938, 815 N.W.2d 126 (2012).  The Supreme Court subsequently denied

petitioner's motion for reconsideration.  *See People v. Meissner*, 493 Mich. 922, 823 N.W.2d 565

(2012).

     5.     Petitioner, through counsel, filed the instant application for a writ of habeas corpus

on May 29, 2013.  As grounds for the writ of habeas corpus, he raises the five claims raised by

counsel on direct appeal, as well as the ineffective assistance claim based on counsel's failure to

request a proper home invasion instruction that petitioner raised in his *pro per* brief.

     6.     Respondent filed his answer on December 5, 2013.  He contends that a portion of

petitioner's sufficiency of the evidence claim relating to the home invasion conviction is

unexhausted, that petitioner's prosecutorial misconduct claim is barred by petitioner's procedural

default, and that all of petitioner's claims are without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

     Petitioner's convictions arise from the domestic assault of his girlfriend, Candace

Worthington.  The evidence adduced at trial was accurately summarized by the Michigan Court of

Appeals:

>      On November 28, 2009, Candace Worthington appeared at the Waterford
> police station, visibly shaken and upset. She reported that defendant, with whom she
> had a relationship, had broken her door and had sent her threatening text messages.
> She showed a police officer the text messages, which included " You trying to die?"
> and "now you will reap the repercussions," as well as defendant's pointed message
> in response to Worthington's telling him that she had gone to the police: "... I am
> going to beat the shit out of you." Worthington described to the police several
> experiences she had with defendant over the prior months, including one in which
> defendant had destroyed her phone, another in which he pushed her down the stairs,
> and another in which he put her in a chokehold. Worthington wrote a statement
> recounting the threatening text messages, the prior physical injuries, and the other
> information she had given to the police.
>      Worthington's statement also described an incident that had occurred just that
> morning, when Worthington had been awakened by a crashing noise and saw

defendant in her bedroom. Defendant pushed her shoulder, asked for a cigarette, tossed coins at her, and then left. The prosecutor subsequently charged defendant with home invasion, obstruction of justice, and domestic violence.

Before trial, the prosecutor filed a notice of intent to use verbal and written statements Worthington had given to police on two separate occasions in August and November 2009. Defendant filed motions in limine to suppress Worthington's statements and to suppress information about a prior incident of abuse defendant had inflicted on a different woman. The trial court granted the motion concerning the incident with the other woman, but denied the motion concerning Worthington's August and November statements to the police.

By the time of trial in May 2010, Worthington was pregnant with defendant's child. When the prosecutor called her to testify, Worthington recast and recharacterized many of the facts from her November statements. She testified that when she went to the police in November, she was enraged because defendant was having a relationship with another woman. She further testified that because of her anger she had embellished and exaggerated the facts in her statement. For example, she testified that although defendant was living with her, she had told the police he was not living with her. She also testified that the text messages she had shown the police were out of context. She attempted to justify the text message that said, "You trying to die?" by explaining that the message was his response to her text message informing him that she would be walking home from a bar late at night. Similarly, she minimized the conduct that had occurred on the morning she wrote the statement and testified that defendant was just checking on her to make sure she was all right. At the close of the prosecutor's direct examination, Worthington testified that defendant had never beaten her and had never threatened her.

*Meissner*, 294 Mich. App. at 442-44, 812 N.W.2d at 41-42.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state

6

criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Sufficiency of the Evidence (Claims II & III)*

Petitioner contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt on each of the charges upon which he was convicted. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4

8

(2011) (per curiam).  The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).  Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.[1]  Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*,

---

[1]Although *Jackson* and *Coleman* involved sufficiency of the evidence reviews of jury verdicts, the same standard is applied to verdicts rendered in bench trials. *See United States v. Bronzino*, 598 F.3d 276, 278 (6th Cir. 2010).

*Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."  *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

　　2.　　*Analysis*

　　　　*a.  Home Invasion and Domestic Assault*

Petitioner first contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt on the home invasion and domestic assault charges.  Michigan's home invasion statute provides, in relevant part:

> [1] A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, [2] a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or [3]a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
> 　　(a) The person is armed with a dangerous weapon.
> 　　(b) Another person is lawfully present in the dwelling.

MICH. COMP. LAWS § 750.110a(2).  As the language of the statute makes clear, there are multiple ways in which a person may violate the statute.  In order to prove a defendant's guilt, the prosecution must establish: (1) that the defendant either (a) broke and entered a dwelling or (b) entered a dwelling without permission; (2) either (a) did so with the intent to commit a felony, larceny or assault or (b) committed a felony, larceny, or assault while entering, present in, or exiting the dwelling; and (3) while entering, present in, or exiting the dwelling either (a) the defendant was armed with a dangerous weapon or (b) another person was lawfully in the dwelling.  *See People v.*

10

*Wilder*, 485 Mich. 35, 43, 780 N.W.2d 265, 269 (2010). Michigan's domestic assault statute provides: "[A]n individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both."  MICH. COMP. LAWS § 750.81(2). A defendant convicted of violating subsection (2) is subject to enhanced penalties if he has previously been convicted of domestic assault. *See id.* § 750.81(3).

Petitioner contends that the prosecution presented insufficient evidence to establish that he assaulted the victim, as necessary to establish both domestic assault and the second element of the home invasion offense. The Michigan Court of Appeals rejected this claim, concluding that the evidence showed that petitioner "threw change at Worthington and pushed her.  These acts constituted an offensive touching, from which a reasonable jury could find that defendant assaulted Worthington." *Meissner*, 294 Mich. App. at 454, 812 N.W.2d at 47. This determination was reasonable. As the Michigan Court of Appeals explained, neither the home invasion statute nor the domestic assault statute defines the term "assault." The court of appeals therefore turned to the common law definition of that term. *See generally*, *People v. Flick*, 487 Mich. 1, 11, 790 N.W.2d 295, 301 (2010). As the court of appeals explained, under the common law an assault is "'either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery.'" *Meissner*, 294 Mich. App. at 454, 812 N.W.2d at 46 (quoting *People v. Starks*, 473 Mich. 227, 234, 701 N.W.2d 136, 140 (2005)). Further, "'[a] battery is an intentional, unconsented and harmful or offensive touching of the person of another[.]'" *Id.* (quoting

*People v. Reeves*, 458 Mich. 236, 240 n.4, 580 N.W.2d 433, 435 n.4 (1998)).  Petitioner contends that the evidence was insufficient because there was no evidence that petitioner had an assaultive intent or placed the victim in fear of an immediate battery.  Fear of an imminent battery, however, is not always required.  As the definition above makes clear, an assault can be shown either by an attempt to commit a battery or by an act that places the victim in apprehension of receiving a battery. The first type of assault, known as "attempted-battery assault," *People v. Nickens*, 470 Mich. 622, 628, 685 N.W.2d 657, 661 (2004), does not require a showing that the victim feared an imminent battery. *See People v. Lazzeri*, No. 260333, 2006 WL 2060410, at *1 (Mich. Ct. App. July 25, 2006) (per curiam) (evidence sufficient to show assault based on offensive touching even where the victim testified she did not feel scared); *cf. Starks*, 473 Mich. at 240-41, 701 N.W.2d at 144 (Cavanagh, J., concurring) ("[E]ven if the district court's conclusion that the complainant was not placed in fear is accorded great weight, there was still sufficient evidence that an attempted-battery assault nonetheless occurred.").  The prosecution was therefore not required to show that petitioner intended to injure or harm the victim, or that he intended to cause her fear.  All the prosecution was required to show was that petitioner intended to batter the victim, that is, intended to commit an offensive touching.  *See People v. Sutton*, No. 248652, 2004 WL 2413384, at *1 (Mich. Ct. App. Oct. 28, 2004) (per curiam); *cf. People v. Matyas*, No. 192663, 1998 WL 1997487, at *1 (Mich. Ct. App. Jan. 23, 1998) ("Assault and battery protects against unwanted touchings which are intentional but may not result in physical harm.").  A simple push is sufficient to constitute an "offensive touching," and thus a battery.  *See People v. Connelley*, No. 261901, 2006 WL 1867223, at *2 (Mich. Ct. App. July 6, 2006) (per curiam).  In light of this understanding of Michigan law, and in light of evidence from which the jury could conclude that petitioner had pushed the victim's shoulder, it cannot be said that

the jury's verdict was "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. It follows that the Michigan Court of Appeals's rejection of this claim was reasonable.

Petitioner also contends that the evidence was insufficient to support the home invasion charge because there was no evidence that he entered the dwelling without permission. As respondent rightly notes, petitioner never presented this insufficiency argument in the state courts, and thus it is unexhausted. Nevertheless, the claim is meritless. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). As noted above, the prosecution could prove that petitioner was guilty of home invasion by showing either that he entered the home without permission, or that he broke and entered. Here, there was evidence that petitioner broke and entered the home. The victim reported to the police that petitioner had broken her door, and that she had been awakened by a crashing noise. This evidence was sufficient to prove that defendant committed a breaking and entering of the home. Petitioner contends that he was living at the home at the time, and thus that he had lawful authority to enter the home. There was no question that petitioner had moved out of the apartment in early November. *See* Trial Tr., Vol. II, at 36. Although the victim testified at trial that petitioner had moved back into the apartment, in her statement to the police she indicated that petitioner had moved all of his stuff out of the apartment and that he hadn't been staying at the apartment between the time he moved out and the date of her police report. *See id.* at 36, 38.[2] The victim also sent a text message to petitioner telling him not to come to "*my* house" (not "home" or "our house"). *See id.* at 42-43. It was for the jury

---

[2]As discussed below, the victim's statements to the police were admitted as substantive evidence.

13

to determine which version of events given by the victim–her earlier statements or her trial testimony–was worthy of belief. The jury resolved this credibility contest in favor of the prosecution. As the Supreme Court has explained, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The trier of fact was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the victim's statement to the police, it cannot be said that the jury's finding that petitioner broke and entered the apartment was "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Obstruction of Justice

Petitioner also contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt on the obstruction of justice charge. Michigan law provides that "[a]ny person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony[.]" MICH. COMP. LAWS § 750.505. The Michigan courts have recognized obstruction of justice as a common law offense punishable under § 750.505. *See People v. Jenkins*, 244 Mich. App. 1, 14-15, 624 N.W.2d 457, 463 (2000). As the court of appeals explained, obstruction of justice "'is generally understood as an interference with the orderly administration of justice.'" *Meissner*, 294 Mich. App. at 454, 812 N.W.2d at 47 (quoting *People v. Thomas*, 438 Mich. 448, 455, 475 N.W.2d 288, 291 (1991)). Obstruction of justice is not a singular offense, but rather "a category of offenses[,] a common example [of which] is witness coercion." *Meissner*, 294 Mich. App. at 454, 812 N.W.2d

14

at 47 (citing *People v. Tower*, 215 Mich. App. 318, 320, 544 N.W.2d 752, 754 (1996)). The Michigan Court of Appeals rejected petitioner's claim that the prosecution presented insufficient evidence to sustain the obstruction of justice charge. The court noted that petitioner had sent the victim several threatening text messages after she told him she was going to the police. These included that the victim had "made a grave mistake" and would "reap the reprecussions," that if the victim really went to the police he was "going to beat the shit out of you," and that if the victim "really called the cops, you will really get beat bad." *Id*. at 455, 812 N.W.2d at 47. The court of appeals concluded that "[a] reasonable jury could find that these messages constituted obstruction of justice" because "the messages made it clear that [petitioner] would harm Worthington if she made a statement to the police," and thus "[b]y sending the text messages to Worthington, [he] 'willfully and corruptly hamper[ed], obstruct[ed], and interfere[d] with a proper and legitimate criminal investigation.'" *Id* (quoting *People v. Somma*, 123 Mich. App. 658, 662, 333 N.W.2d 117, 119 (1983)) (alterations within internal quote by *Meissner* court). This determination was reasonable.

Petitioner contends that he could not have been convicted of obstruction of justice because he did not attempt to prevent the victim from going to the police, and in any event obstruction of justice cannot be shown in the absence of a criminal proceeding. Specifically, petitioner argues: "In order to threaten a witness, there must have been a court proceeding for which the witness had been subpoenaed to testify. Even if Petitioner threatened Ms. Worthington, the threats cannot be classified as obstruction of justice where the justice system was not yet involved." Br. in Supp. of Pet., at 30. This argument challenges the Michigan Court of Appeals's interpretation of state law, and thus presents a challenge that is not cognizable on habeas review. Although cast in terms of the

sufficiency of the evidence, petitioner is really challenging the state court's interpretation of what this element requires.  Such a challenge is not cognizable on habeas review.  As explained above, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law . . . .")). "'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).  As the Second Circuit explained, "*Winship* does not invite federal habeas courts to engage in a substantive analysis of state statutory terms. Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes." *Ponnapula*, 297 F.3d at 182.  In *Sanford* the Sixth Circuit explained, in language worthy of complete quotation here:

> "*Jackson* establishes that states must act on the basis of sufficient evidence. The principle seems unproblematic: it is barbaric to imprison persons who no reasonable juror could think had committed a crime. Implementing *Jackson* is not so easy as stating its principle, however. Judgments represent the application of law to fact. Evidence can be 'insufficient' only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. A federal court may not issue the writ on the basis of a perceived error of state law. The difference between unreviewable legal interpretations and factual claims open under *Jackson* establishes a formidable problem of implementation.
> 
> Consider four situations in which a defendant might say that the evidence is insufficient:

16

(1) State law defines the combination of elements X, Y, and Z as criminal. (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.) The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.

(2) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.

(3) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z', but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z', the court convicts the defendant.

(4) State case law defines the combination of elements X, Y, and Z as criminal. The supreme court of the state concludes that this is an incorrect interpretation of the statute and that the prosecution need establish only X and Y. Circumstance Z, the court concludes, is an affirmative defense. After a trial at which the prosecution establishes only X and Y, the court convicts the defendant."

*Sanford*, 288 F.3d at 860-61 (quoting *Bates*, 934 F.2d at 102 (internal citations and quotations omitted)).  Case (1) represents the typical *Jackson* claim, which is cognizable on habeas review. Case (2), however, presents a pure question of state law that is beyond the reach of a federal habeas court, while Case (3) likewise is merely a variant of Case (2).  *See id.* at 861 (citing *Bates*, 934 F.2d at 102).  Here, petitioner's argument falls within Case (2) or (3).  He argues, essentially, that state law requires criminal proceedings to have been initiated before witness intimidation can amount to obstruction of justice.  The Michigan Court of Appeals, in rejecting petitioner's claim, concluded otherwise.  It was for the Michigan courts, and not this Court on habeas review, to define the elements of the obstruction of justice offense under state law.  And the Michigan courts have determined as a matter of state law that "threatening or otherwise attempting to discourage" someone "from cooperating in a criminal investigation . . . falls within the offense of hampering, obstruction, and interfering with a legitimate criminal investigation," and thus constitutes obstruction of justice. *People v. Strauss*, No. 260541, 2006 WL 2423361, at *4 (Mich. Ct. App.

Aug. 22, 2006) (per curiam); *see also*, *Somma*, 123 Mich. App. at 662, 333 N.W.2d at 119 ("It was an offense at common law to willfully and corruptly hamper, obstruct, and interfere with a proper and legitimate criminal investigation."). Based on the threatening texts, the jury could rationally conclude beyond a reasonable doubt that petitioner attempted to discourage the victim from cooperating with the police, thus obstructing a proper and legitimate criminal investigation. Thus, the jury's verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Evidentiary Claims (Claims IV & V)*

Petitioner next claims that he was denied a fair trial by the introduction of other acts evidence and the victim's hearsay statements given to the police. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state

18

court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

### *a. Prior Acts*

At trial the prosecution introduced evidence that petitioner had assaulted the victim on prior occasions. Specifically, the prosecution introduced evidence that petitioner had on prior occasions pushed the victim and choked her, ripped off her shirt and bra, pushed her down the stairs, and threatened to kill and beat her. This evidence was introduced pursuant to Mich. Comp. Laws § 768.27b, which in relevant part provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of

19

domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." MICH. COMP. LAWS § 768.27b(1). The Michigan Court of Appeals rejected petitioner's claim that the other acts evidence was not properly admitted under § 768.27b, reasoning that "[a]ny potential unfair prejudice to defendant was substantially outweighed by the evidence's probative value. The prior acts of domestic violence illustrated the nature of defendant's relationship with Worthington and provided information to assist the jury in assessing her credibility." *Meissner*, 294 Mich. App. at 452, 812 N.W.2d at 45-46. Petitioner is not entitled to relief on this claim.

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001). In short, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence," *Bugh*, 329 F.3d at 512, and thus petitioner is not entitled to habeas relief on this claim.[3]

---

[3]Similar to § 768.27b, Michigan law also explicitly allows introduction of evidence in a child sexual assault case of previous instances of child sexual assault committed by the defendant without the need to satisfy the requirements of Rule 404(b). *See* MICH. COMP. LAWS § 768.27a. Federal law likewise explicitly allows such evidence. *See* FED. R. EVID. 414. The courts have repeatedly rejected due process challenges to these and similar laws from other jurisdictions, *see, e.g.*, *United States v. Coutentos*, 651 F.3d 809, 819 (8th Cir. 2011); *United States v. LeMay*, 260 F.3d 1018, 1024-27 (9th Cir. 2001); *Ray v. Kernan*, 646 F. Supp. 2d 1102, 1123 (N.D. Cal. 2009), further supporting the conclusion that the Michigan Court of Appeals's rejection of petitioner's claim was reasonable.

*b.  Hearsay Statements*

Petitioner also contends that he was denied a fair trial by the introduction of the victim's hearsay statements regarding the assault in the form of her statements to the police reporting the incident.  This evidence was not admitted as a prior inconsistent statement for impeachment purposes, but was admitted as substantive evidence pursuant to MICH. COMP. LAWS § 768.27c, which provides:

> Evidence of a statement by a declarant is admissible if all of the following apply:
> (a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.
> (b) The action in which the evidence is offered under this section is an offense involving domestic violence.
> (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.
> (d) The statement was made under circumstances that would indicate the statement's trustworthiness.
> (e) The statement was made to a law enforcement officer.

MICH. COMP. LAWS § 768.27c(1).  The Michigan Court of Appeals extensively analyzed petitioner's arguments that the evidence was inadmissible under § 768.27c, rejecting each of them.  *See Meissner*, 294 Mich. App. at 446-51, 812 N.W.2d at 42-45.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner cannot show that the introduction of the victim's prior statements as substantive evidence of his guilt violated any clearly established federal law.  "[T]he rule prohibiting the use of a prior inconsistent statement as substantive evidence of guilt is not a rule of constitutional dimension."  *Nance v. Boynton*, No. 06-14523, 2008 WL 4387084, at * 7 (E.D. Mich. Sept. 24, 2008) (Roberts, J., adopting report of Komives, M.J.) (citing *Isaac v. United States*, 431 F.2d 11, 15 (9th Cir.1970)); *see also*, *White v. McQuiggin*, No. 2:09-CV-13238, 2011 WL 5983493, at *5

21

(E.D. Mich. Nov. 30, 2011) (Hood, J.). Thus, a state rule of evidence that permits the introduction of prior inconsistent statements as substantive evidence of guilt does not violate the Constitution or any clearly established federal law. *See Ford v. Superintendent, SCI-Frackville*, No. 2:12-CV-01278, 2013 WL 5457801, at *6 (E.D. Pa. Sept. 19, 2013); *Newsome v. Commissioner of Corrections*, No. 3:01CV1968, 2012 WL 6115083, at *8-*9 (D. Conn. Dec. 6, 2012); *United States ex rel. Wilson v. McAdory*, No. 00 C 1957, 2004 WL 524435, at *4 (N.D. Ill. Mar. 10, 2004). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Prosecutorial Misconduct (Claim VI)*

Petitioner next contends that he was denied a fair trial by the prosecutor's improper comments during opening statement and closing argument. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.   *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether prosecutorial

22

comments deprived a defendant of a fair trial, a court may not consider the remarks in isolation, but must consider the remarks in the context of the entire trial, including the prosecutor's appropriate comments, the court's instructions to the jury, and the evidence presented in the case. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11.

2.    *Analysis*

Petitioner contends that the prosecutor improperly appealed to the jury's sympathy for the victim by reading the victim's statement to the police during opening statement. The Michigan Court of Appeals rejected this claim, reasoning that the prosecutor was merely "stating the facts he intended to prove at trial, which is permissible in opening statements," and that the statement "was not so inflammatory that it prejudiced defendant." *Meissner*, 294 Mich. App. at 456, 812 N.W.2d at 48. This determination was reasonable. As the court of appeals correctly observed, the prosecutor merely recited a statement that was admitted into evidence at trial. Even if the reading of the statement had some effect of garnering sympathy for the victim, the statement was much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the

23

victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999) (en banc).  "Indeed, *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief."  *Parker*, 132 S. Ct. at 2155 (citing *Darden*, 477 U.S. at 180, nn. 11 & 12 (prosecutor referring to defendant as an "animal" and stating "I wish I could see [the defendant] with no face, blown away by a shotgun.")).  Finally, any potential prejudice was cured by the trial court's instruction to the jury that it must decide the case solely on the evidence and "must not let sympathy or prejudice influence your decision."  Trial Tr., Vol. II, at 181; *see Baylor v. Renico*, No. 05-CV-71624, 2009 WL 982212, at *7 (E.D. Mich. Apr. 13, 2009) (Hood, J.); *Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999) (Cleland, J.).

Petitioner next contends that the prosecutor improperly vouched for a prosecution witness and petitioner's guilt when the prosecutor argued: "The assault was, he pushed her and he threw change at her.  You heard Officer Allen explain that those are assaults."  Trial Tr., Vol. II, at 144. The court of appeals rejected this claim, reasoning that the prosecutor's comment did not vouch for the officer's testimony but merely "summarized testimony elicited by defense counsel during cross-examination."  *Meissner*, 294 Mich. App. at 457, 812 N.W.2d at 48; *see* Trial Tr., Vol. I, at 181-82. This determination was reasonable.  Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*,

24

268 F.3d 377, 404 (6th Cir. 2001).[4]  Here, the prosecutor did not indicate a personal belief in any witness's credibility or petitioner's guilt, or suggest knowledge of facts not before the jury.  Rather, viewed in context, the prosecutor's comment merely reflected his argument that the evidence established the legal elements of an assault under Michigan law.  This was not improper.

Petitioner also contends that the prosecutor improperly vouched for petitioner's guilt by arguing that this was a "textbook case" of domestic violence and arguing that the victim had lied on the stand, as often happens in domestic violence cases.  *See* Trial Tr., Vol. II, at 144.  The Michigan Court of Appeals rejected petitioner's claim, concluding that even if the prosecutor improperly referred to facts not in evidence, the prosecutor's comments were not prejudicial in light of the trial court's instruction that the lawyers' statements were not evidence.  *See Meissner*, 294 Mich. App. at 457, 812 N.W.2d at 48.  This determination was reasonable.  Again, viewed in context the prosecutor's comment did not impermissibly vouch for the witnesses or petitioner's guilt.  The prosecutor merely explained how the evidence confirmed his prediction that the victim would testify favorably to petitioner, and was followed by an extensive discussion, based on the evidence, of why the victim's statement to the police was more believable than her testimony at trial.  Further, as the court of appeals observed, the trial court instructed the jury that the prosecutor's comments were not evidence.  In these circumstances, petitioner cannot show that the prosecutor's comment deprived him of a fair trial.

Finally, petitioner contends that the prosecutor improperly denigrated defense counsel during rebuttal argument by stating: "I always know, as a prosecutor, that the defense is in trouble when

---

[4]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering."  *See Francis*, 170 F.3d at 551.

– and back on their heels when they basically ride two horses into town.  What defense counsel's argument – and what I mean by that is, he didn't do anything, but if he  – he didn't do what they said, but if he did what they said, he's even not guilty."  Trial Tr., Vol. II, at 176.  The court of appeals rejected this claim, concluding that it was not improperly prejudicial.  *See Meissner*, 294 Mich. App. at 457-58, 812 N.W.2d at 48-49.  This determination was reasonable.  The comment falls far short of even more egregious comments which have been held not to deprive a defendant of a fair trial.  *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth."); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws").

In short, the Michigan Court of Appeals thoroughly analyzed each of petitioner's prosecutorial misconduct claims, applying the appropriate due process test under *Darden*.  For the reasons set forth above, the Michigan Court of Appeals's application of that test was reasonable.  "[B]ecause the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching

26

outcomes in case-by-case determinations,' [this Court] ha[s] no warrant to set aside the [Michigan Court of Appeals's] conclusion." *Parker*, 132 S. Ct. at 2155. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

G.      *Ineffective Assistance of Counsel (Claim I)*

Finally, petitioner contends that his trial counsel rendered constitutionally ineffective assistance. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.*
> *Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,
> 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*,
> 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether
> an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,
> 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.
> The *Strickland* standard is a general one, so the range of reasonable applications is
> substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard

28

against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.      *Analysis*

Petitioner contends that counsel was ineffective for failing to request an instruction that petitioner's entry into the home had to be without permission.  The Michigan Court of Appeals rejected this claim, reasoning: "The charged offense required the prosecutor to prove that defendant broke into and entered a dwelling, in keeping with CJI2d 25.2a.  The record indicates that defense counsel researched the issue and stated he was satisfied on that issue.  Defense counsel was not ineffective regarding this decision."  *Meissner*, 294 Mich. App. at 460, 812 N.W.2d at 50.  This determination was reasonable.  At trial, counsel initially objected to the proposed home invasion instruction, based on MICHIGAN CRIMINAL JURY INSTRUCTION 2D § 25.2, arguing that the instruction should include as one of the elements that "[d]efendant didn't have permission to be in the dwelling."  Trial Tr., Vol. II, at 117.  This lead to the following discussion:

MR. WIGOD:      Two C is a different theory.  Home invasion entry without permission.  Since the Defendant, he broke and entered, then the standard instruction –

MR. MORRIS:      Judge, I would like –

THE COURT:      25.2 C, home invasion-first degree, enters without permission is a new offense of home invasion.  It is not a subset of home invasion-first degree.  So that's why there was 25.2 A and 25.2 C.

MR. MORRIS:      I would like the opportunity to go back to my office and research it.

*Id*. at 118.  After reviewing the matter, defense counsel indicated that he was satisfied with the

instructions. *See id*. at 138. The record shows that counsel was fully cognizant of petitioner's defense, initially requested an instruction based on that offense, and ultimately acquiesced in the proposed instruction based on his considered judgment that the proposed instruction accurately reflected the law. Even if counsel was ultimately incorrect, this falls far short of showing that counsel was so unreasonable that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Further, in light of the fact that the prosecutor had a fairly strong basis on which to argue that petitioner was not living in the home at the time, it was not unreasonable for counsel to focus his defense on the argument that petitioner's act of shoving the victim's shoulder to wake her up and throwing change on the bed to pay for a cigarette did not constitute an assault, an argument that if accepted would have compelled an acquittal on both the home invasion and domestic assault charges. For these reasons, petitioner cannot show that the Michigan Court of Appeals's rejection of petitioner's claim was an unreasonable application of the *Strickland* standard. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.   *Recommendation Regarding Certificate of Appealability*

1.   *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S.

30

880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  Because a rational jury could conclude beyond a reasonable doubt that petitioner's acts of shoving the victim's shoulder and throwing change at her constituted an assault, that petitioner broke and entered the home, and that petitioner threatened the victim to prevent her from cooperating in a legitimate criminal investigation, the resolution of petitioner's sufficiency of the evidence claims is not reasonably debatable.  Because petitioner's prior acts and the victim's statements to the police were properly admitted under state law and because there is no clearly established federal law precluding the admission of such evidence under the Due Process Clause, the resolution of petitioner's evidentiary claims is not reasonably debatable.  As explained above, petitioner cannot show that the prosecutor made any prejudicially improper remarks, and thus the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable.  Finally, for the reasons explained above petitioner cannot show that the resolution of his ineffective assistance claim is reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: April 17, 2014                               s/Paul J. Komives
                                                   PAUL J. KOMIVES
                                                   UNITED STATES MAGISTRATE JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective

33

email addresses or First Class U.S. mail to the non-ECF participants on April 17, 2014.

s/ Kay Doaks
Case Manager