UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER M. MEISSNER,

           Petitioner,

                                      Case No. 2:13-cv-12351
vs.                                       HON. GERSHWIN A. DRAIN

DUNCAN MacLAREN,

           Respondent.
_____/

**<u>ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [#10], DENYING PETITION FOR WRIT OF HABEAS CORPUS [#1] AND DENYING A CERTIFICATE OF APPEALABILITY</u>**

This matter is before the Court on Magistrate Judge Komives's Report and Recommendation dated April 17, 2014 [#10]. For the reasons stated below, the Court finds that Christopher Meissner ("Petitioner") is not entitled to a writ of habeas corpus and a Certificate of Appealability is inappropriate under the circumstances.

**I.    INTRODUCTION**

On May 29, 2013, Petitioner filed his Petition for Writ of Habeas Corpus [#1] under 28 U.S.C. § 2254, alleging that his incarceration violates his constitutional rights. Following a jury trial in the Oakland County Circuit Court, he was convicted on May 17, 2010, of (1) second-offense domestic violence, MICH. COMP. LAWS ("M.C.L.") § 750.81(3); (2) first-degree home invasion, M.C.L. § 750.110a(2); and (3) obstruction of justice, M.C.L. § 750.505. On June 10, 2010, the trial court sentenced Petitioner to concurrent terms of 93-days imprisonment for domestic violence, 6-30 years for home invasion, and 2-15 years for obstruction of justice. Petitioner appealed as of right to the Michigan Court of Appeals. On October 25, 2011, the court

1

of appeals affirmed his convictions. *Id.* at 460. On June 20, 2012, the Michigan Supreme Court denied Petitioner leave to appeal in a standard order. *People v. Meissner*, 491 Mich. 938 (2012).

Petitioner raises the following claims in his Petition:

I. PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS ATTORNEY FAILED TO ADEQUATELY INVESTIGATE AND PRESENT HIS DEFENSE AND WHERE HE FAILED TO REQUEST AN INSTRUCTION THAT TO PROVE HOME INVASION, THE BREAKING AND ENTERING MUST BE WITHOUT PERMISSION (6TH AMENDMENT).

II. PETITIONER WAS DENIED DUE PROCESS OF LAW WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTIONS OF HOME INVASION AND DOMESTIC ASSAULT (14TH AMENDMENT).

III. PETITIONER WAS DENIED DUE PROCESS OF LAW WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTION OF OBSTRUCTION OF JUSTICE (14TH AMENDMENT).

IV. PETITIONER WAS DENIED A FAIR TRIAL BY THE ADMISSION OF PRIOR ACTS THAT WERE MORE UNFAIRLY PREJUDICIAL THAN PROBATIVE (14TH AMENDMENT).

V. PETITIONER WAS DENIED A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF A HEARSAY STATEMENT IMPROPERLY USED AS SUBSTANTIVE EVIDENCE; THE STATEMENT WAS INADMISSIBLE UNDER MCL § 768.27c AND THE PREJUDICIAL EFFECT OF THE HIGHLY INFLAMMATORY, IRRELEVANT ALLEGATIONS OUTWEIGHED ANY PROBATIVE VALUE (14TH AMENDMENT).

VI. PETITIONER WAS DENIED A FAIR TRIAL BY THE IMPROPER COMMENTS MADE BY THE PROSECUTOR IN OPENING STATEMENT AND CLOSING ARGUMENT; TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE PROSECUTOR'S ARGUMENTS (6TH AND 14TH AMENDMENTS).

This matter was referred to Magistrate Judge Paul J. Komives, who issued a Report and Recommendation on April 17, 2014 [#10]. He recommended that the Court deny both the Petition and a Certificate of Appealability. Petitioner timely filed his Objections to Report and

2

Recommendation [#11], raising objections to the Magistrate Judge's conclusions with respect to the following claims:

A. Sufficiency of Evidence of Assault, Home Invasion, and Obstruction of Justice
B. Unfair Prejudice of Prior-Acts and Hearsay Evidence
C. Prosecutorial Misconduct During Opening and Closing Statements
D. Ineffective Assistance of Counsel in Failing to Pursue the Defense of Permission to Enter

Upon review, the Court finds that the Magistrate Judge correctly concluded that Petitioner has failed to demonstrate entitlement to habeas relief and that a Certificate of Appealability should be denied. Accordingly, the Court denies the Petition and declines to issue a Certificate of Appealability.

## II.   FACTUAL BACKGROUND

The Magistrate Judge relied on the factual record as stated in the court of appeals's opinion. A state court's factual findings are presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has not objected to anything in the factual record.

> On November 28, 2009, Candace Worthington appeared at the Waterford police station, visibly shaken and upset. She reported that defendant, with whom she had a relationship, had broken her door and had sent her threatening text messages. She showed a police officer the text messages, which included "You trying to die?" and "now you will reap the repercussions," as well as defendant's pointed message in response to Worthington's telling him that she had gone to the police: "... I am going to beat the shit out of you." Worthington described to the police several experiences she had with defendant over the prior months, including one in which defendant had destroyed her phone, another in which he pushed her down the stairs, and another in which he put her in a chokehold. Worthington wrote a statement recounting the threatening text messages, the prior physical injuries, and the other information she had given to the police.
> Worthington's statement also described an incident that had occurred just that morning, when Worthington had been awakened by a crashing noise and saw defendant in her bedroom. Defendant pushed her shoulder, asked for a cigarette, tossed coins at her, and then left. The prosecutor subsequently charged defendant with home invasion, obstruction of justice, and domestic violence.

  Before trial, the prosecutor filed a notice of intent to use verbal and written statements Worthington had given to police on two separate occasions in August and November 2009. Defendant filed motions in limine to suppress Worthington's statements and to suppress information about a prior incident of abuse defendant had inflicted on a different woman. The trial court granted the motion concerning the incident with the other woman, but denied the motion concerning Worthington's August and November statements to the police.

  By the time of trial in May 2010, Worthington was pregnant with defendant's child. When the prosecutor called her to testify, Worthington recast and recharacterized many of the facts from her November statements. She testified that when she went to the police in November, she was enraged because defendant was having a relationship with another woman. She further testified that because of her anger she had embellished and exaggerated the facts in her statement. For example, she testified that although defendant was living with her, she had told the police he was not living with her. She also testified that the text messages she had shown the police were out of context. She attempted to justify the text message that said, "You trying to die?" by explaining that the message was his response to her text message informing him that she would be walking home from a bar late at night. Similarly, she minimized the conduct that had occurred on the morning she wrote the statement and testified that defendant was just checking on her to make sure she was all right. At the close of the prosecutor's direct examination, Worthington testified that defendant had never beaten her and had never threatened her.

*People v. Meissner*, 294 Mich. App. 438, 442-44 (2011).

### III.  LAW & ANALYSIS

  **A.  Standard of Review for Magistrate Judge's Report and Recommendation**

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636.  This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  § 636(b)(1).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*  The Court is not required to review portions of a Report and Recommendation to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985).

4

In order to preserve the right to appeal, a party must file objections to the Report and Recommendation within fourteen days of service of a copy. 28 U.S.C. § 636(b)(1); E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas*, 474 U.S. at 145; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

### B. Standard of Review for Habeas Petition Under 28 U.S.C. § 2254

To grant a writ of habeas corpus, the Court must determine that adjudication of the petitioner's claim in state-court proceedings resulted in a decision that was (1) contrary to or involved an unreasonable application of federal law as clearly established by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during those proceedings. 28 U.S.C. § 2254(d). The Court is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Even though courts generally should review claims of insufficient evidence first for efficiency, *Joseph v. Coyle*, 469 F.3d 441, 453-54 (6th Cir. 2006), the Court discusses Petitioner's claim of ineffective assistance of counsel first because its sole issue of permission to enter also constitutes the basis for some of his other claims.

### C. Ineffective Assistance of Counsel in Failing to Pursue the Defense of Permission to Enter

Petitioner argues that his counsel failed to pursue his strongest defense: One cannot break into an apartment to which he has permission to enter. This claim fails for several reasons.

When evaluating a claim of ineffective assistance of counsel warranting habeas relief, the relevant "clearly established federal law" is *Strickland v. Washington*. *Williams v. Taylor*, 529 U.S. 362, 391 (2000); *People v. Pickens*, 446 Mich. 298, 318, 323 (1994). Under *Strickland*, a

5

petitioner must show that the state appellate court should have determined that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense such that the trial was unfair and the result is unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is entitled to a presumption of reasonableness and adequacy. *Id.* at 689. And even if counsel's performance is shown to be deficient, there must also be a reasonable probability that had assistance been adequate, the jury would have had reasonable doubt about the defendant's guilt. *Id.* at 690.

The court of appeals properly recognized that defense counsel was procedurally adequate in accepting the initial jury instruction after having an opportunity to research the matter. As Petitioner correctly notes, counsel must know the law or undertake further reasonable investigation if needed. *Id.* at 690-91. And that is exactly what happened. As the court of appeals intimated, defense counsel was apparently unaware of the difference between the two theories of first-degree home invasion—"breaking and entering" vs. "entering without permission"—as evidenced by his initial objection to the proposed jury instruction. Trial Tr. vol. 2, 117, May 14, 2010. But after requesting time to research the issue, *id.* at 118, plus a two-hour recess, *id.* at 121, counsel withdrew his objection, *id.* at 138. Therefore, counsel's actions, at least, show effective assistance.

The phrasing of the relevant statutory provision supports the court of appeals's determination that defense counsel was effective in deciding not to demand a lack-of-permission jury instruction. The home-invasion statute on which Petitioner's conviction rests—M.C.L. § 750.110a(2)—states in relevant part:

> [A] person who **breaks and enters a dwelling** <u>or</u> **enters a dwelling without permission** and, at any time while he or she is . . . present in . . . the dwelling, commits a[n] . . . assault is guilty of home invasion in the first degree if at any

6

> time while the person is entering, present in, or exiting the dwelling . . . [a]nother person is lawfully present in the dwelling.

M.C.L. § 750.110a(2) (emphasis and underlining added). The express mention of "without permission" in only one of the disjunctive theories invokes the rule of statutory construction that the legislature acts intentionally and purposely in including or excluding specific language in different parts of a statute. *People v. Peltola*, 489 Mich. 174, 185 (2011). Because the theory of "breaking and entering" and the theory of "entering without permission" are alternatives to each other, and only the latter considers permission to enter, such permission is irrelevant under the former.

Moreover, while Petitioner may argue that the phrase "without permission" modifies both "breaks and enters a dwelling" and "enters a dwelling," the phrasing of the rest of the provision supports a distinction. The rest of the provision proscribes home invasion through mere intent to commit a felony, larceny, or assault in the dwelling (i.e. instead of actually committing a felony, larceny, or assault), and states in relevant part:

> **A person who breaks and enters a dwelling with intent** to commit a felony, larceny, or assault in the dwelling, [or] **a person who enters a dwelling without permission with intent** to commit a felony, larceny, or assault in the dwelling . . . is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling . . . [a]nother person is lawfully present in the dwelling.

M.C.L. § 750.110a(2) (emphasis added). Because "breaks and enters a dwelling" and "enters a dwelling without permission" are listed in completely separate clauses, lack of permission is only relevant to the latter. Therefore, because the jury was instructed about home invasion through "breaking and entering," not through "entering without permission," Trial Tr. vol. 2, 188, it did not need to consider permission to enter. Accordingly, the statutory language at issue completely justifies counsel's decision to withdraw his objection.

7

In light of the statutory language, there is no case law supporting Petitioner's contention that defense counsel should have argued that a lack-of-permission element is required for establishing home invasion under the theory of "breaking and entering." The majority of case law that establishes a lack-of-permission requirement for "breaking and entering" involves the pre-1994 versions of "breaking and entering," not the 1994 home-invasion statute. For example, four of the cases that Petitioner cited in his Petition for Writ of Habeas Corpus [#1] and in his Objections to Report and Recommendation [#11] involved "breaking and entering" under M.C.L. § 750.110, not home invasion under M.C.L. § 750.110a: *People v. Rider*, 411 Mich. 496, 497 (1981); *People v. Szpara*, 196 Mich. App. 270, 271 (1992); *People v. Brownfield*, 216 Mich. App. 429, 430 (1996); and *People v. Lukkarila*, No. 187014, 1997 WL 33354339, at *1 (Mich. Ct. App. Feb. 4, 1997), *rev'd on other grounds*. But the statute underlying these cases does not contain the same distinction found in M.C.L. § 750.110a: A person can only violate M.C.L. § 750.110 if he "breaks and enters, with intent to commit a felony or a larceny therein . . . ." M.C.L. § 750.110. Therefore, while the Court acknowledges that the newer home-invasion statute unfortunately uses the identical phrase "breaks and enters" as the older breaking-and-entering statute in cases such as *Rider*, *Szpara*, *Brownfield*, and *Lukkarila*, such cases do not interpret the phrase within the context of the home-invasion statute.

Likewise, another of Petitioner's cases, *People v. Eggleston*, 186 Mich. 510 (1915), did not involve home invasion, rather it involved burglary under an unspecified law, *id.* at 511, which was presumably common-law burglary because *Eggleston* preceded the 1931 breaking-and-entering statute underlying *Rider*, *Szpara*, *Brownfield*, and *Lukkarila*. Finally, yet another of Petitioner's cases, *People v. Gauze*, 542 P.2d 1365 (Cal. 1975), involved entering with intent to commit a felony (i.e. a burglary), not home invasion. *Id.* at 1366. Therefore, most of the cases

involving "breaking and entering" do not establish a lack-of-permission requirement for "breaking and entering" within the context of home invasion.

Case law that properly recognizes the distinction between the two theories of home invasion states that permission to enter is irrelevant under the theory of "breaking and entering." For example, in *People v. Schilling*, the Michigan Court of Appeals noted that the statutory provision is stated in the disjunctive; therefore, only the theory of "entering without permission" requires lack of permission. *People v. Schilling*, No. 270051, 2007 WL 2682980, at *3 (Mich. Ct. App. Sept. 13, 2007). Accordingly, the court held that a prosecutor does not have to prove lack of permission to secure a conviction for first-degree home invasion under the theory of "breaking and entering." *Compare id. with People v. Holloway*, No. 283384, 2009 WL 1101546, at *1 (Mich. Ct. App. Apr. 23, 2009) (holding that the defendant is still guilty of home invasion when he merely entered a home after others had first broken into it because he did not have permission to enter).

The remaining case law involving the home-invasion statute either involves "entering without permission" or does not distinguish between the two theories of home invasion. For example, Petitioner cites two relevant opinions—*People v. Jex* and *People v. Hureskin*—that involved violations of M.C.L. §§ 750.110a(4)[1] and 750.110a(2), respectively. *People v. Jex*, No. 295825, 2012 WL 130418, at *1 (Mich. Ct. App. Jan. 17, 2012); *People v. Hureskin*, No. 301349, 2012 WL 2476684, at *1 (Mich. Ct. App. June 28, 2012). However, while *Jex* states that lack of permission is a requirement of home invasion, the defendant in *Jex* was charged under the alternative theory of "entering without permission," *Jex*, 2012 WL 130418, at *3, so this case is not helpful to the present case. And even though *Hureskin* states that lack of

---

[1] Section 750.110a(4) contains the same operative language as M.C.L. § 750.110a(2).

9

permission is a requirement of home invasion under the theory of "breaking and entering," the court did not examine the statutory distinction, but instead relied on *Rider* and *Brownfield*, which involved a different statute,[2] as previously discussed. *Hureskin*, 2012 WL 2476684, at *3. Therefore, while it is unknown whether defense counsel did in fact research the issue, he would not have discovered any case law warranting continued objection. As such, there is no legal basis for finding that defense counsel was ineffective, and the court of appeals was not unreasonable in finding that his assistance was effective. Petitioner is not entitled to relief on this claim.

### D. Sufficiency of Evidence of Assault, Home Invasion, and Obstruction of Justice

Petitioner argues that the prosecution did not prove (1) offensive touching (for domestic assault and assault committed during home invasion), (2) intent to assault or batter (domestic assault and assault committed during home invasion), (3) lack of permission to enter (home invasion), and (4) an actual attempt to prevent the victim, Ms. Worthington, from going to the police (obstruction of justice). These claims likewise fail for several reasons.

When evaluating a claim of insufficient evidence warranting habeas relief, the relevant "clearly established federal law" is *Jackson v. Virginia*. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010). Under *Jackson*, a petitioner must show that when viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime satisfied beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

---

[2] The court in *Hureskin* also relied on *People v. Toole*, 227 Mich. App. 656 (1998), which also involved the earlier breaking-and-entering statute, not the later home-invasion statute. *Id.* at 657.

Concerning offensive touching, the court of appeals correctly determined that *some* rational fact-finder in Ms. Worthington's position could have found a push on the shoulder while sleeping at 7:30am, Dkt. 8-11, at 10, to be offensive. Also relevant are the facts that Petitioner admitted to having an affair the previous day and Ms. Worthington was angry with him before the assault—angry enough to have confiscated his key to the apartment. Trial Tr. vol. 2, 76-77. Accordingly, a reasonable person in Ms. Worthington's shoes would more likely have been offended by a push on the shoulder given the particular emotional circumstances. Therefore, the court of appeals reasonably concluded that *some* fact-finder could have determined that an assaultive act occurred.

Concerning the intent to assault or batter, the court of appeals correctly determined that a person can commit assault with intent to touch against the victim's will instead of intent to make the victim fear a battery. The jury had the option to find Petitioner guilty of assault for attempting to commit a battery as an alternative to assault for making Ms. Worthington fear an imminent battery; the court instructed the jury on both theories of domestic assault. Trial Tr. vol. 2, 190. The Magistrate Judge thoroughly explained the difference between the two. Dkt. 10, at 11-12. The Court adopts his discussion in this regard in its entirety. In short, a person can commit an assault by either (1) attempting to commit a battery ("attempted-battery assault"), in which case the only intent that the prosecutor must prove is the defendant's intent to commit a battery, *People v. Johnson*, 407 Mich. 196, 242-43, (1979); or (2) making the victim reasonably fear an imminent battery ("apprehension assault"), in which case the prosecutor must prove the defendant's intent to place the victim in fear of an imminent battery, *id.* at 243. Because the jury verdict was general and not specific, Trial Tr. vol. 3, 5, it is unknown which theory the jury used. However, the absence of this information from the record is of no consequence because the

11

evidence was sufficient if any rational trier of fact could have found under either theory. In the instant case, the uncontroverted fact that Petitioner pushed Ms. Worthington's shoulder establishes the general intent to commit a battery, thereby simultaneously establishing the specific intent required for an attempted-battery assault. Therefore, the court of appeals reasonably concluded that a fact-finder could have determined there was assaultive intent.

Concerning the lack of permission to enter, the court of appeals correctly determined, albeit impliedly, that such lack of permission is not an element of first-degree home invasion under the theory of "breaking and entering." The court stated that "[d]efense counsel . . . determined that the [original jury] instruction was acceptable in keeping with the elements of proof." Dkt. 8-12, at 11. As previously discussed, the statute provides two theories for home invasion—one requiring a lack of permission and one not. Therefore, the prosecutor was not required to prove a lack of permission to convict Petitioner. Since Ms. Worthington testified that her door had been kicked in after she had shut it when she returned home earlier that morning, Trial Tr. vol. 2, 40, a rational fact-finder could have determined that Petitioner applied some amount of force to constitute "breaking." And since Ms. Worthington testified that Petitioner was in her bedroom even though he was not in the apartment when she returned that morning, *id.*, a rational fact-finder could also have determined that Petitioner entered her apartment. Therefore, the court of appeals reasonably concluded that a fact-finder could have determined that there was a home invasion.

Concerning an actual attempt to prevent Ms. Worthington from going to police, the court of appeals correctly determined that threats can constitute actual attempts to interfere with a criminal investigation. It is well-settled in Michigan that attempts to dissuade victims or other witnesses from assisting law enforcement can constitute obstruction of justice. *People v.*

*Coleman*, 350 Mich. 268, 280 (1957). Such attempts to dissuade may be accomplished not only by physical acts but also by words. *Id.* In the instant case, as the Magistrate Judge laid out in great detail, Petitioner texted multiple threatening messages to Ms. Worthington after finding out that she planned to go to the police. Dkt. 10, at 15. The Court adopts the Magistrate Judge's discussion in this regard in its entirety. In short, the purpose of Petitioner's words was to discourage Ms. Worthington from reporting him. Therefore, the court of appeals reasonably concluded that a fact-finder could have determined that there was obstruction of justice. Petitioner is not entitled to relief on this claim.

### E. Unfair Prejudice of Prior-Acts and Hearsay Evidence

Petitioner argues that admission of Ms. Worthington's police statement prejudiced the trial because it was hearsay and referred to prior acts. These claims also fail for several reasons.

To establish unfair prejudice warranting habeas relief, a petitioner must show that the admission of evidence rendered the trial arbitrary and fundamentally unfair, in violation of due process. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). However, if the evidence was allegedly admitted in violation of state law, a claim of unfair prejudice is generally not cognizable in a federal habeas petition because of the principle of federalism. *Id.* at 67-68. Such a claim only rises to a level of constitutional magnitude, by denying the defendant a fundamentally fair trial, if the error was egregious. *Id.* An error is egregious only when it violates fundamental notions of justice, fair play, and decency. *Dowling v. United States*, 493 U.S. 342, 353 (1990).

Concerning the prior-acts evidence, Petitioner alleges that it was admitted in violation of Michigan law, which is therefore not cognizable in a federal habeas petition. As the Magistrate Judge noted, Petitioner appealed the admission of prior acts in violation of the state domestic-

13

violence statute—M.C.L. § 768.27b—not a federal source of constitutional law. Therefore, the overwhelming presumption is that federalism bars consideration by this Court.

Moreover, the alleged erroneous admission does not rise anywhere near the level of constitutional magnitude. As the court of appeals noted, any evidence offered against a criminal defendant is prejudicial to some extent. *People v. Fisher*, 449 Mich. 441, 451 (1995). However, the court also noted that the prior acts of domestic violence helped to illustrate the nature of Petitioner's relationship with Ms. Worthington and helped the jury to assess her credibility. *Meissner*, 294 Mich. App. at 452. Therefore, Petitioner cannot show that the admission of this evidence was so fundamentally unfair as to deny him a fair trial.

Concerning the hearsay evidence, the opportunity to cross-examine Ms. Worthington negates any prejudice. The Confrontation Clause of the Sixth Amendment is a procedural, not substantive, guarantee; this guarantee primarily ensures that testimonial evidence is tested by the adversarial process, not necessarily that such evidence is reliable. *Crawford v. Washington*, 541 U.S. 36, 61 (2004). To that end, a criminal defendant must have the opportunity to cross-examine a witness at some point, whether before or during trial. *Id.* at 68. In the instant case, Ms. Worthington testified for the prosecution and was cross-examined, Trial Tr. vol. 2, 53-107, and re-cross-examined, Trial Tr. vol. 2, 114-16, by defense counsel. Therefore, Petitioner's claim in this regard lacks a basis in the Confrontation Clause.[3]

### F. Prosecutorial Misconduct During Opening and Closing Statements

Petitioner argues that the prosecutor improperly (1) read Ms. Worthington's police statement during opening statements to gain the jury's sympathy, (2) vouched for a prosecution

---

[3] It is also worth noting that Petitioner has not alleged any defect in defense counsel's cross-examination of Ms. Worthington.

witness's credibility during closing statements, (3) vouched for Petitioner's guilt during closing statements, and (4) disparaged defense counsel during closing statements.

To establish prosecutorial misconduct warranting habeas relief, a petitioner must show that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Such remarks must be egregious, *id.* at 647; mere undesirable or universally condemned remarks are insufficient, *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Finally, this unfairness determination depends on the totality of the trial. *DeChristoforo*, 416 U.S. at 645.

Here, the court of appeals did not unreasonably apply clearly established Supreme Court law when it determined that even when considered individually, the prosecutor's statements already fall far short of egregious conduct. As the Magistrate Judge noted, the prosecutor merely recited Ms. Worthington's police statement; the prosecutor neither manipulated nor misstated the content. *Compare* Trial Tr. vol. 1, 119-22 *with* Dkt. 8-11, at 9-11. Additionally, the prosecutor did not vouch for the officer-witness's credibility or Petitioner's guilt because he did not state a personal belief in either of them. *See* Trial Tr. vol. 2, 144-58. Finally, the Magistrate Judge correctly recognized that the prosecutor's statement about defense counsel was benign compared with more disparaging remarks that have still not constituted egregious conduct. Dkt. 10, at 25-26. The Court adopts the Magistrate Judge's conclusions in this regard in their entirety.

The court of appeals correctly determined that when viewed within the trial as a whole, other circumstances negate any possible unfairness stemming from the prosecutor's statements. Even beyond Petitioner's objection that the statements must be considered in the aggregate, such statements must also be considered based on the totality of the circumstances of trial. *DeChristoforo*, 416 U.S. at 645. By the time the prosecutor read Ms. Worthington's police

15

statement during opening remarks, the court had denied Petitioner's motion in limine concerning the police statement. Dkt. 8-5, at 19. Therefore, as far as the prosecutor was concerned, he was reciting a document that had already been cleared by the court and that would later be admitted into evidence. Moreover, the court instructed the jury on at least two occasions that the attorneys' statements are not evidence—once before opening statements and once before deliberation. Trial Tr. vol. 1, 112-14; Trial Tr. vol. 2, 183. Finally, the court informed the jury before opening statements of the importance of keeping an open mind and waiting to decide the case only during deliberation. Trial Tr. vol. 1, 118-19. Had none of these occurred, Petitioner would have had a tenuous argument at best. However, since these surrounding circumstances were present, they neutralize any possible unfairness to Petitioner. Therefore, the court of appeals reasonably concluded that the prosecutor's statements did not infect the trial with unfairness.

### G. Certificate of Appealability

A petitioner may not appeal the denial of a habeas petition unless a judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1). A judge may issue a Certificate only if the applicant has made a "substantial showing" of the denial of a constitutional right. § 2253(c)(2). An applicant makes such a substantial showing by establishing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

A district court must issue or deny a Certificate when it enters a final order adverse to the applicant. Rule 11(a), 28 U.S.C. foll. § 2254. If the court issues a Certificate, it must state the specific issue(s) for which a "substantial showing" was made. *Id.* If the court denies a

16

Certificate, the parties may not appeal the denial, but may apply for a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. *Id.*

In the instant case, Petitioner has not shown that his claims are reasonably debatable. Accordingly, the Court finds that none of Petitioner's claims are appealable, and denies a Certificate of Appealability.

**IV. CONCLUSION**

For the foregoing reasons, Magistrate Judge Paul J. Komive's Report and Recommendation [#10] is ACCEPTED. Petitioner's objections [#11] are OVERRULED. Petitioner's Petition for Writ of Habeas Corpus [#1] is DENIED. A Certificate of Appealability shall not issue in this matter.

SO ORDERED.


Dated: June 30, 2014                    s/Gershwin A. Drain
                                        United States District Court Judge


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2014, by electronic and/or ordinary mail.

                                        s/Julie Owens  acting in the absence of Tanya Bankston
                                        Case Manager

17